UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Seventeen South, LLC and G.W. Myrtle Beach Development, LLC, | ) ) ) | Civil Action No.: 4:13-cv-03119-BHH |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **Opinion and Order** |
| D.R. Horton, Inc., | ) ) ) | |
| Defendant. | ) ) ) | |

**BACKGROUND**

This matter is before the Court on several outstanding motions in this case, including the plaintiffs' motion to dismiss the defendant's counterclaims (ECF No. 11), the plaintiffs' motion to amend its complaint (ECF No. 12), the defendant's motion to cancel *lis pendens* (ECF No. 18), the plaintiffs' motion to remand (ECF No. 24), and the defendant's motions for summary judgment (ECF Nos. 53 & 54). For the reasons set forth in this order:

- The plaintiffs' motion to dismiss the defendant's counterclaims (ECF No. 11) is **denied**;
- the plaintiffs' motion to amend its complaint (ECF No. 12) is **granted**;
- the defendant's motion to cancel *lis pendens* and dismiss the plaintiffs' second cause of action (ECF No. 18) is **denied** as to the cancellation of the *lis pendens* and **granted** as to the dismissal of the second cause of action;
- the plaintiffs' motion to remand (ECF No. 24) is **denied**;
- the defendant's motions for summary judgment against GWMB (ECF No. 53) is **denied**; and
- the defendant's motion for summary judgment against Seventeen South (ECF No. 54) is **granted**, and the claims brought by Seventeen South are **dismissed without prejudice**.

1

This action concerns the interpretation of a Reciprocal Easement and Right of Way Agreement ("the Agreement") dated September 16, 2005, between the Wizman Group, LLC, ("Wizman") and Rose Real Estate, Inc., ("Rose"). The Agreement appears to govern the development of 39.117 acres of real property bordering U.S. Highway 17 south of Myrtle Beach, which includes both residential and commercial parcels. The various provisions of the Agreement purport to be binding on Wizman, Rose, and their successors. The plaintiffs, G.W. Myrtle Beach Development, LLC ("GWMB") and Seventeen South, LLC (Seventeen South), contend that they are successors to Wizman and that the defendant, D.R. Horton ("DRH"), is a successor to Rose.

DRH owns a portion of the property in a residential subdivision known as Ocean Walk. Ocean Walk consists of approximately sixty-five (65) residential lots, some of which have been sold and conveyed to individuals as residences. DRH owns most of the remainder of the lots and is building houses for sale upon them. The plaintiffs own parcels of commercial property adjacent to the Ocean Walk subdivision. A road known as Castle Harbor Drive extends from Hwy 17, along the southwest boundary of the commercial property and Ocean Walk. DRH purchased the lots within Ocean Walk on September 27, 2012, approximately five months before the plaintiff GWMB purchased its property. At the time of DRH's purchase of the Ocean Walk property, Castle Harbor Drive was complete and in use, as were all roads within the Ocean Walk Subdivision. GWMB has developed or is planning to develop a Dollar General on it property. Seventeen South is likewise planning a commercial enterprise.

GWMB claims that in order to build the Dollar General Store, it was required by the South Carolina Department of Transportation ("SCDOT") to construct an

acceleration/deceleration lane on Castle Harbor Drive. The Agreement contains a number of provisions that address how the successors of Wizman and Rose would share (or not share) in the responsibility for paying for the construction of roads. GWMB claims that the Agreement requires DRH to reimburse GWMB for funds spent to build the acceleration/deceleration lanes on Castle Harbor Drive (referred to in the Agreement as RE2). Seventeen South makes similar claims with regard to a different road, Coral Beach Circle (referred to in the Agreement as RE1), which now apparently also requires turn lanes. GWMB alleges that it constructed acceleration/deceleration lanes at a cost of over $130,000 and requested reimbursement from DRH, which has refused to pay. Seventeen South has yet to construct acceleration/deceleration lanes, but claims that they are required and expects that their construction will cost $110,000.

The parties have filed a number of motions in this case, which are listed above. On November 19, 2014, the Court held a hearing at which the parties presented arguments on most of these motions. This order addresses all of the outstanding motions in this case, with the exception of the motions in limine, which the Court will consider at a later date.

## DISCUSSION

### I.    Motion to Dismiss the Counterclaims (ECF No. 11)

In addition to filing this action, the plaintiffs also recorded a *lis pendens* on the defendant's property. The defendant answered alleging that the recordation of the *lis pendens* was unlawful and asserting counterclaims for (1) abuse of process, (2) intentional interference with contract, (3) intentional interference with prospective contractual relations, and (4) civil conspiracy. (*See* Def.'s Answer ¶¶ 43-65, ECF No.

3

5.)  On December 16, 2013, the plaintiffs filed a motion to dismiss these counterclaims (ECF No. 11.)

### A.  <u>Standard of Review</u>

A plaintiff's complaint (or counterclaim) should set forth "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *See also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (applying the standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) to a motion to dismiss a counterclaim).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555).  To show that the pleader is "entitled to relief," the claim must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555.  In considering a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the [non-moving party] . . . ."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009).  Notably, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" do not qualify as well pled facts.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint or counterclaim pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the

line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citing *Twombly*,
550 U.S. at 557).   Stated differently, "where the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the complaint has alleged--
but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ.
P. 8(a)).  Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's
disbelief of a complaint's factual allegations."   *Colon Health Centers of Am., LLC v.
Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319,
327 (1989)).   "A plausible but inconclusive inference from pleaded facts will survive a
motion to dismiss . . . ."  *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d
25, 30 (1st Cir. 2010) (Souter, J.).

## B. Analysis

The  plaintiffs'  motion  to  dismiss  the  counterclaim  is  based  primarily  on  the
contention that the filing of a *lis pendens* is absolutely privileged.  In support of their
motion, the plaintiffs cite the South Carolina Court of Appeals' decision in *Pond Place
Partners, Inc. v. Poole*, 567 S.E.2d 881 (Ct. App. 2002), where the court found that the
filing of a *lis pendens* was privileged against a cause of action for slander of title.  *See
id.* at 896-97.  However, as the defendant correctly points out in its response, the court
specifically held that although its decision limited actions for slander of title, it did "not
extinguish every form of relief when a party files a *lis pendens* which is motivated by
some  malicious  intent."   *Id.* at 897.   The  court  observed,  "[t]he  jurisdictions  are  in
agreement that the proper action against a maliciously filed *lis pendens* is under abuse
of process or malicious prosecution."  *Id.*  *Pond Place* and the other authorities cited by
the plaintiffs do not stand for the type of broad immunity that they claim.  The Court

5

finds that the defendant's counterclaims state a plausible cause of action under *Iqbal* and *Twombly*, and the Court denies the motion to dismiss.

## II.    Motion to Cancel Lis Pendens and Dismiss Plaintiff's Second Cause of Action (ECF No. 18)

On December 31, 2013, the defendant filed a motion to cancel the *lis pendens* and to dismiss the plaintiffs' second cause of action.  The plaintiffs' second cause of action appears to be a request that this Court issue a *lis pendens*, although the plaintiffs have already filed a *lis pendens* in state court.  The defendant argues that this is not a valid cause of action, and the plaintiffs' did not address the argument in their response. Thus the Court concludes that the plaintiffs' second cause of action should be dismissed.  *See Green v. CitiMortgage, Inc.*, 2011 WL 5866230, at *7 n.7 (W.D. Va. Nov. 21, 2011) ("The court will also grant the defendants' motion to dismiss regarding Green's motion for *lis pendens*.  Green indicated at oral argument that he was abandoning his motion for *lis pendens*, stating, 'I don't think there is an action [for lis pendens], per se.'").

Turning to the defendant's motion to cancel the *lis pendens* that the plaintiffs have already recorded, the Court denies the motion.  South Carolina Code § 15-11-10 authorizes a plaintiff "in an action affecting the title to real property" to "file with the clerk of each county in which the property is situated a notice of the pendency of the action." The purpose of this provision is "to inform a purchaser or encumbrancer that a particular piece of real property is subject to litigation."  *Pond Place Partners, Inc.*, 567 S.E.2d at 889.

The defendant argues that the *lis pendens* that the plaintiffs filed should be cancelled because none of the plaintiffs' claims affect the title to real property.

However, the defendant appears to acknowledge that a claim "to establish the existence of an easement" is one of several types of claims that properly give rise to a notice of *lis pendens*.  (*See* ECF No. 18-1 at 5 (citing *Pond Place Partners, Inc.*, 567 S.E.2d at 889-90).)  Although the plaintiffs have not filed a specific claim asking the Court to declare the existence of an easement, their claims require the Court to interpret a reciprocal easement and right of way agreement.  The plaintiffs have argued that the obligations at issue in this case run with the land and attach to those who purchase parcels from the defendant, and, therefore, a *lis pendens* is appropriate to warn possible purchasers that they may incur these obligations.  While the Court does not necessarily accept this argument, it has not foreclosed it either.  The defendant has not directed the Court to any conclusive authority indicating that the *lis pendens* in this case is improper, and thus the Court declines to cancel it.

### III.    <u>Motion to Amend the Complaint (ECF No. 12)</u>

The plaintiffs moved to amend their complaint on December 16, 2013, approximately a month after this action was originally filed.  The proposed amendment to the complaint adds a request for money that the plaintiffs anticipate they will spend to build acceleration-deceleration lanes for a road referenced in the Agreement as Road Entrance 1 ("RE 1") in front of the property known as Seventeen South, LLC.  (*See* ECF No. 12-1 ¶¶ 13-17, 34(B).)

While a district court has discretion regarding whether to grant a motion to amend, it is "limited by the principle, embodied in Rule 15(a) that 'leave shall be freely given when justice so requires,' and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits."  *Davis v. Piper Aircraft Corp.*, 615

F.2d 606, 613 (4th Cir. 1980). Such a motion "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986)).

The defendant points out that (1) RE1 has yet to be built, so the plaintiffs' have no current claim for reimbursement, and (2) the Agreement does not require Rose and its successors (arguably the defendant) to reimburse Seventeen South for the construction of the acceleration/deceleration lanes on RE1. It then argues that the proposed amendment fails to specify the basis for the additional claims and is futile. The plaintiffs consolidated response in opposition to the defendant's motion for summary judgment describes the plaintiffs' theory, which is that the omission of a reimbursement provision with regard to RE1 is a scrivener's error. As will be discussed in greater detail, the Court finds the Agreement to be highly ambiguous, and therefore it declines to foreclose the plaintiffs' argument by denying the motion to amend. Furthermore, the Court finds that the defendant's argument that the amendment is futile because the statute of limitations has run is contingent upon resolution of issues that are reserved for the jury. For these reasons, the Court grants the plaintiffs' motion to amend (ECF No. 12.)[1]

---

[1] The Court has permitted the amendment for the purpose of considering all of Seventeen South's claims. The Court ultimately concludes that all of Seventeen South's claims must be dismissed without prejudice for the reasons discussed in section V.(B)(1) of this Order.

## IV.    <u>Motion to Remand (ECF No. 24)</u>

The plaintiffs argue that the Court should remand the case to the Court of Common Pleas for Horry County pursuant to paragraph 8 of the Agreement, which governs "default."  Paragraph 8 indicates that its provisions "shall be enforceable in a court of competent jurisdiction in South Carolina and the parties, their successors and assigns, stipulate and agree to venue in Horry County, South Carolina."  The plaintiffs characterize this as a "forum selection clause" and argue that it is binding on the defendant as a successor in interest to Rose.

The defendant argues (1) that the motion to remand is untimely because it was not filed within 30 days of removal; (2) that the language in the default provision does not preclude a lawsuit in the District of South Carolina; and (3) that remanding the case would deny it the substantive right to have the disputed issue of whether DRH is a successor or assign resolved in federal Court.  At the hearing, counsel for the plaintiffs directed the Court to the Supreme Court's recent ruling in *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), and to Judge Harwell's application of *Atlantic Marine* in *SFL±A Architects, PA v. Marlboro Cnty. Sch. Dist.*, 2014 WL 4269092 (D.S.C. Aug. 28, 2014).  These cases address if and how a court should transfer venue or dismiss a case where a forum selection clause specifies a different jurisdiction or venue.  After carefully reviewing these cases, the Court concludes that they are not applicable here because the provision in question does not preclude federal jurisdiction because the case is in the proper venue.

The Fourth Circuit's opinion in *FindWhere Holdings, Inc. v. Systems. Environment Optimization, LLC*, 626 F.3d 752, (4th Cir. 2010) is instructive on the interpretation of forum selection clauses.  In that case, the court of appeals affirmed the

district court's application of "the widely-accepted rule that forum selection clauses that use the term 'in [a state]' express the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state, whereas forum selection clauses that use the term 'of [a state]' connote sovereignty, limiting jurisdiction over the parties' dispute to the state courts of the named state." *Id.* at 755. The Fourth Circuit found the rule applied by the district court and by other circuits to be "sound" and explicitly adopted it. *Id.*

Here, the language describes "a court *of* competent jurisdiction *in* South Carolina." The terms "of competent jurisdiction" do not exclude a federal court, and the terms "in South Carolina" state the parties' intent as a matter of geography, not a matter of jurisdiction. The plaintiffs argue that the parties "stipulat[ion] and agree[ment] to venue in Horry County, South Carolina" excludes the possibility of federal jurisdiction because there is no federal courthouse in Horry County. The defendant offers two arguments in response. First, the defendant argues that this language is permissive, not exclusive, i.e., it makes clear that suit *may* be brought in Horry County, but does not waive the right to bring suit elsewhere in South Carolina or to remove a case filed in Horry County to federal court. Second, the defendant argues that even if the language is determined to be exclusive, it should be interpreted to include the federal venue embracing Horry County, which is the Florence Division of the District of South Carolina. The Court agrees with the defendant's arguments on both issues.

"When construing forum selection clauses, federal courts have found dispositive the particular language of the clause and whether it authorizes another forum as an *alternative* to the forum of the litigation or whether it makes the designated forum

exclusive." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). "[I]n interpreting forum selection clauses, an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." *Id.* at 651 (citations and quotation marks omitted).

The Court finds that the phrase "stipulate and agree to venue in Horry County, South Carolina" is permissive and not mandatory or exclusive. *See Koresko v. Nationwide Life Ins. Co.*, 403 F. Supp. 2d 394, 400 (E.D. Pa. 2005) (clause stating that "the parties agree to venue and personal jurisdiction in the state or federal courts located in the Eastern District of Pennsylvania" was held to be permissive, not exclusive); *Bentley v. Mut. Benefits Corp.*, 237 F. Supp. 2d 699, 700 (S.D. Miss. 2002) (clause stating that "[t]his Agreement shall be construed under the laws of Florida and the parties stipulate to venue in Broward County" was permissive)[2]; *see also Tolentino v. Mossman*, No. 207-CV-1243-GEB-DAD, 2007 WL 4404447, at *6 (E.D. Cal. Dec. 13, 2007) (citing *Bentley* and holding that a clause stating that "the parties hereto stipulate to venue in a court of competent jurisdiction in Black Hawk County, Iowa . . ." was permissive.). While the language clearly waives the parties' right to object to venue in

---

[2] The district Court in the *Bentley* case offered the following discussion of the term "stipulate," which this Court finds applicable:

> The common meaning of the word "stipulate" with regards to a contract is to "make an express agreement" or "give a promise." Webster's Third New International Dictionary 2245 (1981). Black's Law Dictionary defines a stipulation as "a material condition or requirement in an agreement." Black's Law Dictionary 1427 (7th ed.1999). In the case at hand, by "stipulating" to venue in Broward County, Florida, the parties clearly agreed in advance to consent to venue in Broward County. Thus, neither party could attack as improper venue of an action commenced in Broward County. But by merely having agreed to a Broward County venue, without excluding all other venues, this clause is insufficient to render the Broward County venue mandatory. Nothing in the clause indicates that Broward County courts have exclusive jurisdiction.

*Bentley*, 237 F. Supp. 2d at 702.

Horry County, it does not say that any suit "shall" or "must" be brought in Horry County or that Horry County is the only proper venue.[3]

Even if the Court interpreted the language as mandatory that would still not end the inquiry because the defendant argues that stipulating to exclusive venue in Horry County should not prevent it from removing the case to the Florence Division of the United States District Court for the District of South Carolina, which encompasses Horry County.  The Fourth Circuit has not resolved this issue definitively, and there is a significant split in persuasive authorities.  Some courts have held that an exclusive provision stipulating venue in a particular county does not preclude removal to the division of the federal district court encompassing that county, *see, e.g., Nahigian v. Juno-Loudoun, LLC*, 661 F. Supp. 2d 563, 568 (E.D. Va. 2009) (collecting cases), while others have held that such a provision excludes federal jurisdiction if there is no federal courthouse in the county specified, *see, e.g.*, *Match Factors, Inc. v. Mickey B. Henson Enterprises, Inc.*, 2011 WL 1101363, at *10 (E.D.N.C. Mar. 1, 2011) *report and recommendation adopted,* 2011 WL 1081980 (E.D.N.C. Mar. 23, 2011) (collecting cases).

The undersigned respectfully sides with those courts that have found that the requirement of venue in a particular county does not preclude litigation in the federal division encompassing that county.  The location of federal courthouses is, to some

---

[3] A good example of a mandatory or exclusive forum selection clause is the provision that Judge Harwell relied upon to dismiss the action in *SFL±A Architects*.  The provision read, "the judicial venue for any suit, action, or proceeding arising out of or relating to the Agreement shall be proper *only* in the Court of Common Pleas for Marlboro County, State of South Carolina." 2014 WL 4269092, at *1 (emphasis added).

extent, arbitrary and inconstant,[4] and parties wishing to preclude federal jurisdiction should not rely on the courts to deduce that fact from a provision that speaks only to venue.

For the reasons set forth above, the Court finds that paragraph 8 of the Agreement contains a permissive venue provision that neither bars this Court from hearing the case nor requires remand.  Furthermore, even if the clause were mandatory or exclusive, the Court would decline to remand the case because the Court finds that, in the absence of language indicating otherwise, venue in Horry County fairly includes venue in the federal division encompassing Horry County.   Accordingly, the plaintiffs' motion to remand (ECF No. 24) is denied.

## V.    Motions for Summary Judgment (ECF Nos. 53 & 54)

### A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the party moving for summary judgment carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S.

---

[4] In recent years, the federal judiciary has assembled a list of up to sixty (60) federal courthouses it has considered closing.  *See* Kristi Eaton, *Federal Officials Closing Courthouses In Four States*, Huffington Post (Nov. 20, 2013), http://www.huffingtonpost.com/2013/11/20/courthouses-closing_n_4312934.html.

317, 322 23 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1996). "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir.1987). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

As the Fourth Circuit has observed, "[a] court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). "[F]ederal courts sitting in diversity should apply state contract law as would a court in that state . . . . [h]owever, federal law must govern whether a question is one of law or fact." *Archer Daniels Midland Co. v. Brunswick Cnty., N.C.*, 129 F. App'x 16, 23 (4th Cir. 2005) (citing *Coplay Cement Co. v. Willis & Paul Group,* 983 F.2d 1435, 1438 (7th Cir. 1993)). "Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if 'susceptible of two reasonable interpretations.'" *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245 (quoting *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214, 216 (4th Cir.1965)).

A court should first consider "whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *World-Wide Rights Ltd. P'ship*, 955 F.2d at

245. In reaching this determination, the court must "consider particular provisions in the context of the entire agreement." *Atkinson Warehouse & Distribution, Inc. v. Ecolab Inc.*, 15 F. App'x 160, 163 (4th Cir. 2001). If the court finds the provisions to be unambiguous, it should resolve the matter on summary judgment. If the court finds the contract ambiguous, it may then "examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis." *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245. In other words, "summary judgment is only appropriate 'when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence.'" *Sheridan v. Nationwide Ret. Solutions, Inc.*, 313 F. App'x 615, 617 (4th Cir. 2009) (quoting *Goodman v. R.T.C.,* 7 F.3d 1123, 1126 (4th Cir.1993)). "If . . . resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must . . . be refused and interpretation left to the trier of fact. *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245.

In reviewing the substance of the Agreement, the Court applies South Carolina rules regarding the interpretation of contracts and easements. "Contract interpretation begins with the plain language of the agreement." *Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 407 S.C. 407, 416, 756 S.E.2d 148, 152 (2014), *reh'g denied (June 25, 2014)* (quoting *Gould Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)); *see also S.C. Public Serv. Auth. v. Ocean Forest, Inc.,* 275 S.C. 552, 554, 273 S.E.2d 773, 774 (1981) ("Clear and unambiguous language in grants of easement must be construed according to terms which parties have used, taken, and understood in plain, ordinary,

and popular sense."). "[T]he paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." *Taylor v. Lindsey*, 332 S.C. 1, 4, 498 S.E.2d 862, 863-64 (1998) (citations and quotation marks omitted). "It is not the function of the court to rewrite contracts for parties." *Lewis v. Premium Inv. Corp.*, 351 S.C. 167, 171, 568 S.E.2d 361, 363 (2002). In determining the parties' intent, a contract should "be construed as a whole and different provisions dealing with the same subject matter are to be read together. *Skull Creek Club Ltd. P'ship v. Cook & Book, Inc.*, 313 S.C. 283, 286, 437 S.E.2d 163, 165 (Ct. App. 1993). "A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause." *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). Courts should "construe any doubts and ambiguities in an agreement against the drafter of the agreement." *Mathis v. Brown & Brown of S. Carolina, Inc.*, 389 S.C. 299, 309, 698 S.E.2d 773, 778 (2010).[5]

## B. Analysis

In support of its motion for summary judgment, DRH argues (1) that, under the unambiguous terms of the Agreement, it has no obligation to pay the defendants for the construction of the additional lanes; (2) that it is not a successor to Rose; (3) that GWMB's claims are barred by the statute of limitations; (4) that GWMB has failed to comply with the conditions precedent to enforcing the agreement; (5) that the plaintiffs' equitable claims are baseless; (6) that GWMB is not a real party in interest and thus lacks standing to sue; and (7) that Seventeen South cannot recover because the Agreement does not provide for prospective relief.

---

[5] The Court notes at the outset that it is unclear who drafted the Agreement at issue, and the parties have not offered any significant arguments or evidence on this point.

1. **Summary Judgment with Regard to the Claims of Seventeen South**

As an initial matter, the Court agrees with the defendant that Seventeen South is effectively seeking prospective relief because it has not actually spent any money constructing the lanes for which it is supposedly seeking reimbursement.  In their consolidated response in opposition to the motion for summary judgment, the plaintiffs argue that their first cause of action seeks a declaratory judgment.  However, as the defendant points out in reply, none of the plaintiffs' submissions up to this point have invoked a declaratory judgment statute or in any way indicated that the plaintiffs were seeking a declaratory judgment.  Accordingly, the Court dismisses the claims advanced by Seventeen South without prejudice.[6]

2. **Whether DRH is a Successor to Rose**

Before turning to the primary question of whether the defendant is obligated to contribute to the construction of certain lanes under the terms of the contract, the Court will first address the defendant's argument that it has no obligation to contribute because it is not a "successor" to Rose under the Agreement.  In response, the plaintiffs direct the Court to the "common grantor rule," which holds that:

> where a common grantor opens up a tract of land to be sold in lots and blocks, and, before any lots are sold, inaugurates a general scheme of improvement for such entire tract intended to enhance the value of each lot, and each lot, subsequently sold by such grantor, is made subject to such scheme of improvement, there is created and annexed to the entire tract what is termed a negative equitable easement, in which the several purchasers of lots have an interest, and between whom there exists mutuality of covenant and consideration.

---

[6] The plaintiffs may seek to amend their complaint to add the appropriate cause or causes of action; however, the defendant will be given a proper opportunity to oppose the amendment and discuss any prejudice that it may suffer if such amendment is permitted.

*Sprouse v. Winston*, 212 S.C. 176, 184, 46 S.E.2d 874, 878 (1948) (quoting *Couch v. Southern Methodist University,* 290 S.W. 256, 259 (Tex.Civ. App 1926)).  The Court is not sure that the Agreement in this case should be considered a "negative equitable easement," however, the defendant has not directed the Court to any legal authority or precedent that rebuts the argument or makes clear that DRH should not be considered an assign or successor-in-interest under the Agreement.

Paragraphs 6 and 7 of the Agreement read as follows:

6. Perpetual Easements. These easements are perpetual and continue beyond the terms of this agreement and shall continue indefinitely unless specifically extinguished by a written termination agreement signed by all the parties, their successors or permitted assigns. All terms, conditions, rights-of-way, and easements described herein shall run with the land and title to the real property and shall be binding on all parties, their respective devisees, fiduciary representatives, successors, successors-in-title and assigns.

7. Release Upon Sale. Upon the sale, transfer, assignment or relinquishment by Rose and/or Wizman of all of its legal or equitable right, title and interest in the development, said party's obligations and financial responsibilities under the agreement shall be assumed by the respective successors-in-interest and said parties shall thereafter be released from all obligations described in this agreement.

First, the defendant argues that because it does not own the roads in question, it is not a successor in interest to Rose with regard to the obligation to pay for additional lanes.  Again, however, the Court has not been directed to any legal authority or provision of the Agreement that compels this conclusion.  The Court suspects that the defendant and the homeowners who purchased property from the defendant would argue that the easements and rights-of-way set forth in the Agreement that allow them to access their property are applicable, even though they do not own the roads.  Thus the Court is not persuaded that the obligation to pay for acceleration/deceleration lanes

falls on whoever owns the property the roads were constructed on.  Such a conclusion is not clearly compelled by the Agreement or any authority presented to the Court.

Second, the defendant seizes on the word "all" in paragraph 7 to argue that until Rose "transfer[s], assign[s], or relinquish[es] . . . *all* of its legal or equitable right, title and interest in the development," DRH does not have financial responsibility.  It is unclear from the record whether Rose continues to own an interest in the property, but the defendant has represented to the Court that it believes that Rose does.

The language in paragraph 7 indicates that once Rose no longer owns an interest in the property, any financial responsibilities it has under the Agreement will be assumed by its successors-in-interest, and it will no longer have any obligations under the Agreement.  However, it is not clear whether this provision should also be interpreted to mean that as long as Rose continues to own any interest in the property (no matter how small) it bears sole financial responsibility for any obligations under the Agreement.  Paragraph 6 states that "[a]ll terms, conditions, rights-of-way, and easements described herein shall run with the land and title to the real property and shall be binding on all parties, their respective devisees, fiduciary representatives, successors, successors-in-title and assigns."  This provision suggests that the benefits and duties of the agreement are binding on all those who assume an interest in the property and does not indicate that Rose must relinquish all interest in the property before other parties can be considered "devisees, fiduciary representatives, successors, successors-in-title [or] assigns."  Thus the Court finds that the Agreement is, at the very least, ambiguous regarding whether DRH should be considered a successor to Rose.

3. __Interpretation of Paragraph 4__

The dispute in this case primarily concerns paragraph 4 of the Agreement, which

provides in relevant part:

(a) Within twelve months from issuance by Horry County of subdivision approval for the DEVELOPMENT, ROSE shall design and construct, at its sole cost and expense, the entrance road designed as Road Easement #2 ("RE2") to a depth of 250-feet, as shown on the attached Exhibit "B". The said RE2 entrance road shall be in accordance with applicable standards of Horry County and/or the South Carolina Department of Transportation ("SCDOT") and shall be completed in no event later than September 30, 2007.

(b) Within twenty-four months from issuance by Horry County of subdivision approval for the DEVELOPMENT, ROSE shall design and construct, at its sole cost and expense, the entrance road designed as Road Easement #1 ("RE1") to a depth of 250-feet, as shown on the attached Exhibit "B". The said RE1 entrance road shall be in accordance with applicable standards of Horry County and/or the South Carolina Department of Transportation ("SCDOT") and shall be completed in no event later than September 30, 2008

(c) Subject to the provisions of subparagraph 4(c)(i), below, on or before December 31, 2008, Rose, its successors or assigns, shall design and construct the acceleration /deceleration lanes within the right-of-way of U.S. Highway No. 17 South into the development as may be required by the appropriate agencies or departments of Horry County or SCDOT. Wizman, its successors and assigns, will pay 50-percent of the actual costs and expenses for said design and construction of the acceleration/deceleration lanes within 30 days of written request, along with documentation substantiating the expenses, to Wizman.

(i) Notwithstanding the provisions of subparagraph 4(a), (b), (c) above, in the event Wizman its successors or assigns, desires to develop the commercial parcels or any one of more of them, prior to the time Rose, its successors or assigns, begins construction of the entrance road(s) and acceleration/deceleration lanes Wizman, its successors or assigns, shall have the right to construct the RE2 entrance road as may be required by the appropriate agencies or departments of Horry County or SCDOT

together with such acceleration/deceleration lanes as may be required. The actual costs and expenses for the construction of the entrance roads and acceleration/deceleration lanes shall be reimbursed by Rose, its successors or assigns, to Wizman, its successors or assigns within thirty (30) days of written request and receipt of documentation substantiating the expense to Rose, its successors or assigns.

The parties urge two very different interpretations of this language on the Court, each of which will be discussed.

### a. <u>Defendant's Interpretation of Paragraph 4</u>

The defendant points to the requirement in subparagraph (c) that "Rose, its successors or assigns" build the acceleration /deceleration lanes if they were required "*on or before December 31, 2008.*"  The defendant argues that if Rose and its successors ever had a duty to construct such lanes, that duty was breached when the lanes were not constructed by December 31, 2008.  Noting that the statute of limitations for breach of contract is 3 years, the defendant argues that any cause of action expired before the plaintiffs even purchased their property.  Additionally, the defendant argues that subparagraph (c) only requires construction of the acceleration/deceleration lanes "as may be required by the appropriate agencies or departments of Horry County or SCDOT."  Because the acceleration/ deceleration lanes were not required by Horry County or SCDOT when the road was built, the defendant argues it should not have any obligation to contribute to their construction now.

The defendant also claims that the phrase, "prior to the time Rose, its successors or assigns, begins construction of the entrance road(s) and acceleration/deceleration lanes," indicates that subparagraph (4)(c)(i) would only apply if Wizman or its successors started building the road and any necessary acceleration/deceleration lanes *before* Rose or its successors began construction of the entrance road(s).  The parties

appear to agree that the entrance roads were built before any of them acquired the property.   Finally, anticipating the plaintiffs' argument that paragraph 4(c)(i) allows Wizman and its successors to build acceleration/deceleration lanes and seek reimbursement any time prior to the construction of both the road and the lanes, the defendant points out that the provision entitles Wizman and its successors to build the entrance roads "*together with* such acceleration/deceleration lanes as may be required." The defendant thus claims that the paragraph only contemplates a situation where the roads have not already been constructed and the roads and lanes are built "together."

### b. Plaintiffs' Interpretation of Paragraph 4

The plaintiffs offer a different interpretation of paragraph 4.  They observe that subparagraph (4)(c)(i) begins with the phrase, "Notwithstanding the provisions of subparagraph 4(a), (b), (c) above," which they argue indicates that its requirements are not limited by deadlines in paragraph 4(c).  They then contend that paragraph 4(c)(i) gives them the right to construct the entrance road as well as "such acceleration/deceleration lanes as may be required" and to seek reimbursement from Rose or its successors or assigns.  The plaintiffs argue that the only limitation on this right to build the roads and lanes and seek reimbursement is that it must be done "prior to the time Rose, its successors or assigns, begins construction of the entrance road(s) *and* acceleration/deceleration lanes."  (Emphasis added).  While someone, presumably Rose or one of its successors, had already constructed the entrance road(s), the acceleration/deceleration lanes had not been built.  Thus, the plaintiffs were entitled to construct the lanes required by the appropriate agencies and seek reimbursement from

the defendant.[7]    The plaintiffs appear to admit that they are only entitled to reimbursement for 50% of the cost of building the acceleration/deceleration, although 4(c)(i) does not explicitly limit the reimbursement to this amount.

Finally, in response to the defendant's argument regarding the statute of limitations, the plaintiffs argue that there is no statute of limitations because paragraph 6 provides that the "easements are perpetual."  The Court is not convinced that this language means that there would be no statute of limitations on a breach of the covenants to build the roads and/or deceleration lanes.  However, the Court finds that the contract is, at the very least, ambiguous regarding whether the deadlines in paragraph 4(c) are applicable to the obligations outlines in paragraph 4(c)(i).  Thus, the Court need not address the plaintiffs other statute of limitations argument.

After thoroughly reviewing both the Agreement and the parties' arguments about how it should be interpreted, the Court finds that the Agreement is ambiguous and that both of the parties' conflicting interpretations are reasonable.  Accordingly, the Court concludes that it cannot grant summary judgment solely on the basis of the document. *See Atkinson Warehouse & Distribution, Inc. v. Ecolab Inc.*, 15 F. App'x 160, 163 (4th Cir. 2001) (Summary judgment should be denied if after "[r]eading the entire agreement in context," the court "find[s] each [competing] interpretation to be reasonable.").  The defendant submitted very little in the way of extrinsic evidence regarding the intent of

---

[7] Seventeen South argues that the omission of RE1 (the road that is relevant to Seventeen South) from 4(c)(1) is a scrivener's error, and urges the Court to read RE1 into this provision and find that the defendant has an obligation to contribute to the future construction of acceleration/deceleration lanes on RE1 as well.  Since the Court so that Defendant has to contribute to acceleration/deceleration lanes for RE1 as well.  Since the Court has already dismissed the claims brought by Seventeen South as seeking prospective relief without pleading a cause of action for a declaratory judgment, the Court declines to address this issue at this time.

those who drafted the Agreement, and the evidence submitted by the plaintiffs does not support granting summary judgment.  Thus, the Court finds that neither the plain meaning of the agreement nor the evidence in the record are sufficient to warrant summary judgment.

### 4. Remainder of the Defendant's Arguments

The Court finds that the defendant's remaining arguments in support of its motion for summary judgment are unpersuasive or are precluded by genuine issues of material fact, which must be resolved by a jury.  Accordingly, the defendant's motion for summary judgment against GWMB (ECF No. 53) is denied.

### CONCLUSION

For the reasons set forth above:

- The plaintiffs' motion to dismiss the defendant's counterclaims (ECF No. 11) is **denied**;
- the plaintiffs' motion to amend its complaint (ECF No. 12) is **granted**;
- the defendant's motion to cancel *lis pendens* and dismiss the plaintiffs' second cause of action (ECF No. 18) is **denied** as to the cancellation of the *lis pendens* and **granted** as to dismissal of the second cause of action;
- the plaintiffs' motion to remand (ECF No. 24) is **denied**;
- the defendant's motions for summary judgment against GWMB (ECF No. 53) is **denied**; and
- the defendant's motion for summary judgment against Seventeen South (ECF No. 54) is **granted**, and the claims brought by Seventeen South are **dismissed without prejudice**.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

January 26, 2015
Greenville, South Carolina