UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Seventeen South, LLC and G.W. Myrtle Beach Development, LLC, | Civil Action No.: 4:13-03119-BHH |
| Plaintiff, | |
| vs. | **ORDER AND OPINION** |
| D.R. Horton, Inc., | |
| Defendant. | |

This matter is before the Court on Defendant's renewed motion for summary judgment (ECF No. 129), Plaintiffs' motion to extend discovery (ECF No. 132), and Defendant's motions in limine (ECF Nos. 134, 135, 136, 137).  For the reasons set forth in this order, Defendant's renewed motion for summary judgment is denied, Plaintiff's motion to extend discovery is granted, and Defendant's motions in limine are denied without prejudice.

## **BACKGROUND**

This action concerns the interpretation of a Reciprocal Easement and Right of Way Agreement ("the Agreement") dated September 16, 2005, between the Wizman Group, LLC, ("Wizman") and Rose Real Estate, Inc., ("Rose"). The Agreement appears to govern the development of 39.117 acres of real property bordering U.S. Highway 17 south of Myrtle Beach, which includes both residential and commercial parcels. The various provisions of the Agreement purport to be binding on Wizman, Rose, and their successors. Plaintiffs G.W. Myrtle Beach Development, LLC ("GWMB") and Seventeen

South, LLC (Seventeen South) contend that they are successors to Wizman and that Defendant D.R. Horton ("DRH") is a successor to Rose.

DRH owns a portion of the property in a residential subdivision known as Ocean Walk. Ocean Walk consists of approximately sixty-five (65) residential lots, some of which have been sold and conveyed to individuals as residences. DRH owns most of the remainder of the lots and is building houses for sale upon them. Plaintiffs own parcels of commercial property adjacent to the Ocean Walk subdivision. A road known as Castle Harbor Drive extends from Hwy 17, along the southwest boundary of the commercial property and Ocean Walk. DRH purchased the lots within Ocean Walk on September 27, 2012, approximately five months before Plaintiff GWMB purchased its property. At the time of DRH's purchase of the Ocean Walk property, Castle Harbor Drive was complete and in use, as were all roads within the Ocean Walk Subdivision. GWMB has developed or is planning to develop a Dollar General on its property. Seventeen South is likewise planning a commercial enterprise.

GWMB claims that in order to build the Dollar General Store, it was required by the South Carolina Department of Transportation ("SCDOT") to construct an acceleration/deceleration lane on Castle Harbor Drive. The Agreement contains a number of provisions that address how the successors of Wizman and Rose would share (or not share) in the responsibility for paying for the construction of roads. GWMB claims that the Agreement requires DRH to reimburse GWMB for funds spent to build the acceleration/deceleration lanes on Castle Harbor Drive (referred to in the Agreement as RE2). Seventeen South makes similar claims with regard to a different road, Coral Beach Circle (referred to in the Agreement as RE1), which now apparently

also requires turn lanes. GWMB alleges that it constructed acceleration/deceleration lanes at a cost of over $130,000 and requested reimbursement from DRH, which has refused to pay. Seventeen South has yet to construct acceleration/deceleration lanes, but claims that they are required and expects that their construction will cost $110,000.

The parties previously filed a number of motions in this case, including Defendant's initial motions for summary judgment, which the Court addressed in a January 26, 2015 Order. (ECF No. 101.) In that Order, the Court found that the Agreement was ambiguous as to whether reimbursement was required here and that the parties' conflicting interpretations were reasonable. The Court further found that the extrinsic evidence submitted did not resolve the ambiguity, and denied the motion for summary judgment against GWMB (ECF No. 53). The Court granted the motion for summary judgment against Seventeen South (ECF No. 54) without prejudice for failure to assert the appropriate causes of action—Seventeen South has since amended the Complaint to assert the appropriate causes of action for prospective relief.

On October 14, 2015, Defendant filed a renewed motion for summary judgment, presenting the affidavit of Dennis Permenter ("Permenter"), Rose's signatory to the Agreement, as extrinsic evidence of the signatories' intentions. Plaintiffs filed a response in opposition on November 2, 2015, offering the affidavit of Fred Newby ("Newby"), a drafter of the Agreement, as contradictory evidence of intent. On the same date, Plaintiffs also filed a motion to extend discovery so that the Court would allow them to add Mr. Newby's affidavit to the record. Defendant filed a reply to its renewed motion for summary judgment on November 9, 2015, and a response in opposition to the motion to extend discovery on November 19, 2015.

## DISCUSSION

### I.  Motion to Extend Discovery (ECF No. 132)

The discovery period ended on September 30, 2015. Plaintiffs filed a motion to extend discovery on November 2, 2015, asking that the Court open discovery to allow Plaintiffs to add the affidavit of Newby to the record. (ECF No. 132 at 2.) In their motion, Plaintiffs explain that after Defendant filed the renewed motion for summary judgment, they obtained an additional copy of the Agreement and reviewed the witnesses to the Agreement recorded in the Register of Deeds for Horry County. (*Id.* at 1.) They were eventually able to contact Newby who indicated he had signed as a witness to the Agreement and had also helped draft the Agreement. (*Id.*) Plaintiffs maintain that they conducted a good faith effort to locate any witnesses who could testify as to the meaning and intent of the Agreement. (*Id.* at 2.)

Defendant opposes the motion to extend discovery, arguing that Plaintiffs offer no good cause as to why the discovery deadline should be retroactively extended. (ECF No. 139 at 1–2.) However, "[t]he scope and conduct of discovery are within the sound discretion of the district court." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing *Erdmann v. Preferred Research, Inc. of Ga.*, 852 F.2d 788, 792 (4th Cir. 1988)); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("[C]ourts have broad discretion in [their] resolution of discovery problems arising in cases before [them]." (alterations in original and internal quotation marks omitted)). Although Defendant asserts it would be prejudiced if the Court were to extend discovery, there is little evidence this would be

the case. Accordingly, the Court grants Plaintiffs' motion to extend discovery and considers Mr. Newby's affidavit as part of the record.

## II. Renewed Motion for Summary Judgment (ECF No. 129)

### A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the party moving for summary judgment carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1996). "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir.1987). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

As the Fourth Circuit has observed, "[a] court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992). "[F]ederal courts sitting in diversity should apply state contract law as would a court in that state . . . . [h]owever, federal law must govern whether a question is one of law or fact." *Archer Daniels Midland Co. v. Brunswick Cnty., N.C.*, 129 F. App'x 16, 23 (4th Cir. 2005) (citing *Coplay Cement Co. v. Willis & Paul Group,* 983 F.2d 1435, 1438 (7th Cir. 1993)). "Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if 'susceptible of two reasonable interpretations.'" *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245 (quoting *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214, 216 (4th Cir. 1965)).

A court should first consider "whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245. In reaching this determination, the court must "consider particular provisions in the context of the entire agreement." *Atkinson Warehouse & Distribution, Inc. v. Ecolab Inc.*, 15 F. App'x 160, 163 (4th Cir. 2001). If the court finds the provisions to be unambiguous, it should resolve the matter on summary judgment. If the court finds the contract ambiguous, it may then "examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis." *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245. In other words, "summary judgment is only appropriate 'when the contract in question is unambiguous or when an ambiguity can be

definitively resolved by reference to extrinsic evidence.'" *Sheridan v. Nationwide Ret. Solutions, Inc.*, 313 F. App'x 615, 617 (4th Cir. 2009) (quoting *Goodman v. R.T.C.,* 7 F.3d 1123, 1126 (4th Cir. 1993)). "If . . . resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must . . . be refused and interpretation left to the trier of fact." *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245.

In reviewing the substance of the Agreement, the Court applies South Carolina rules regarding the interpretation of contracts and easements. "Contract interpretation begins with the plain language of the agreement." *Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 756 S.E.2d 148, 152 (S.C. 2014), *reh'g denied (June 25, 2014)* (quoting *Gould Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir. 1991)); *see also S.C. Public Serv. Auth. v. Ocean Forest, Inc.,* 273 S.E.2d 773, 774 (S.C. 1981) ("Clear and unambiguous language in grants of easement must be construed according to terms which parties have used, taken, and understood in plain, ordinary, and popular sense."). "[T]he paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." *Taylor v. Lindsey*, 498 S.E.2d 862, 863–64 (S.C. 1998) (citations and quotation marks omitted). "It is not the function of the court to rewrite contracts for parties." *Lewis v. Premium Inv. Corp.,* 568 S.E.2d 361, 363 (S.C. 2002). In determining the parties' intent, a contract should "be construed as a whole and different provisions dealing with the same subject matter are to be read together. *Skull Creek Club Ltd. P'ship v. Cook & Book, Inc.*, 437 S.E.2d 163, 165 (S.C. Ct. App. 1993). "A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause." *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C.

2009). Courts should "construe any doubts and ambiguities in an agreement against the drafter of the agreement." *Mathis v. Brown & Brown of S. Carolina, Inc.*, 698 S.E.2d 773, 778 (S.C. 2010).

## B. Discussion

In support of its motion for summary judgment, Defendant argues that the "newly obtained extrinsic evidence resolves the ambiguous contractual terms at issue in [Defendant's] favor." (ECF No. 129 at 1.) The terms at issue are contained in paragraph 4 of the Agreement, which provides in relevant part:

(a) Within twelve months from issuance by Horry County of subdivision approval for the DEVELOPMENT, ROSE shall design and construct, at its sole cost and expense, the entrance road designed as Road Easement #2 ("RE2") to a depth of 250-feet, as shown on the attached Exhibit "B". The said RE2 entrance road shall be in accordance with applicable standards of Horry County and/or the South Carolina Department of Transportation ("SCDOT") and shall be completed in no event later than September 30, 2007.

(b) Within twenty-four months from issuance by Horry County of subdivision approval for the DEVELOPMENT, ROSE shall design and construct, at its sole cost and expense, the entrance road designed as Road Easement #1 ("RE1") to a depth of 250-feet, as shown on the attached Exhibit "B". The said RE1 entrance road shall be in accordance with applicable standards of Horry County and/or the South Carolina Department of Transportation ("SCDOT") and shall be completed in no event later than September 30, 2008.

(c) Subject to the provisions of subparagraph 4(c)(i), below, on or before December 31, 2008, Rose, its successors or assigns, shall design and construct the acceleration/deceleration lanes within the right-of-way of U.S. Highway No. 17 South into the development as may be required by the appropriate agencies or departments of Horry County or SCDOT. Wizman, its successors and assigns, will pay 50-percent of the actual costs and expenses for said design and construction of the

acceleration/deceleration lanes within 30 days of written request, along with documentation substantiating the expenses, to Wizman.

(i) Notwithstanding the provisions of subparagraph 4(a), (b), (c) above, in the event Wizman its successors or assigns, desires to develop the commercial parcels or any one of more of them, prior to the time Rose, its successors or assigns, begins construction of the entrance road(s) and acceleration/deceleration lanes Wizman, its successors or assigns, shall have the right to construct the RE2 entrance road as may be required by the appropriate agencies or departments of Horry County or SCDOT together with such acceleration/deceleration lanes as may be required. The actual costs and expenses for the construction of the entrance roads and acceleration/deceleration lanes shall be reimbursed by Rose, its successors or assigns, to Wizman, its successors or assigns within thirty (30) days of written request and receipt of documentation substantiating the expense to Rose, its successors or assigns.

## 1. **Defendant's Interpretation and Permenter's Affidavit**

Defendant offers the same interpretation of paragraph 4 as that given in its initial motion for summary judgment. Now, however, Defendant also relies on Permenter's affidavit to argue that the parties intended that the Agreement be viewed in accordance with Defendant's interpretation. In the affidavit, Permenter offers his "recollection as to the expectations and intent of the parties to the Agreement as executed." (ECF No. 129-2 ¶ 3.)

Specifically, Permenter states that

it was intended and understood that the first Entrance Road [Coral Beach Circle] would be constructed by Rose within twelve months from issuance of the Subdivision approval by Horry County, with a completion date not later than September 30, 2007. The second Entrance Road [Castle Harbor Drive] was to be constructed and completed by Rose within twenty-four months of Subdivision approval but no later than December 31, 2008, as stated in the Agreement, with Wizman to pay 50-percent of the actual costs for any required acceleration/deceleration lanes. Specifically, with respect to Paragraph 4(c)(i), and within the time periods stated in Paragraphs 4(b) and 4(c), it was the intent of Rose and Wizman that if Wizman, as owner of the adjoining Commercial Parcels (as defined in the

Agreement), desired to develop the Commercial Parcels, "<u>prior to the time Rose . . . begins construction of the entrance road(s)</u>", then, and in that event only, Wizman had the right to construct one entrance road [Castle Harbor Drive] together with any required acceleration/deceleration lan[es], in which event Rose would reimburse Wizman for the costs and expenses of same. The intent and understanding of Rose, LRC and Wizman was that the construction of the Entrance Roads and acceleration/deceleration lanes be completed within the "drop dead date" of December 31, 2008. Paragraph 4(c)(i) was included in the Agreement solely to allow Wizman the option to proceed with development before that date if Rose had not already done so.

(*Id.* ¶ 4.) Permenter further states that Rose constructed both entrance roads before December 31, 2008 and that no acceleration/deceleration lanes were required by the governing authority prior to that date. (*Id.* ¶ 5.) He opines that "Rose's obligations under Paragraph 4 were completely fulfilled as of December 31, 2008 and Rose would have no further obligation or financial liability for reimbursement of expenses for future acceleration/deceleration lanes." (*Id.* ¶ 6.)

Defendant refers to Permenter's affidavit and asserts that "it was the signatories' understanding that Rose's obligations under Paragraph 4 would end on December 31, 2008." (ECF No 129-1 at 5.) Defendant further asserts that the affidavit supports a finding that paragraph (4)(c)(i) would only apply if Wizman started building the road(s) and any necessary acceleration/deceleration lanes before Rose or its successors began construction of the entrance road(s). (*Id.* at 6–7.) Finally, Defendant argues that Permenter's affidavit makes it clear that the omission of Coral Beach Circle from Paragraph 4(c)(i) was intentional, and therefore summary judgment on each of Seventeen South's claims is appropriate.

## 2. **Plaintiffs' Interpretation and Newby's Affidavit**

Plaintiffs offer a conflicting interpretation of paragraph 4 and refer the Court to the arguments made in their responses to the initial motions for summary judgment. (ECF No. 131 at 1–4.) They rely on Newby's affidavit to argue that there is an issue of fact as to the intended interpretation of the Agreement.[1] Newby signed the Agreement as a witness to his client, Wizman's, signature and avers that he has "been asked to review [the Agreement] due to [his] involvement in its preparation and execution, as well as the negotiations concerning that Agreement." (ECF No. 131-1 ¶¶ 3, 4.)

Newby testifies that

> As one of the drafters of [the Agreement], Section 4(c)(i) is independent of Sections 4(a), (b) and (c) and the time limits described in Sections 4(a), (b) and (c) were not meant to control Section 4(c)(i), since it was unknown at the time when the commercial parcels would be developed and when, or if, the requirement to construct the acceleration/deceleration lanes would arise.

(*Id.* ¶ 8.) He further testifies that "it is [his] opinion that . . . the parties agreed and intended that Wizman be able to build the acceleration/deceleration lanes and receive reimbursement from Rose, its successors or assigns at any time it became necessary." (*Id.* ¶ 9.) Newby states that the only limitation on this right to build roads and lanes and seek reimbursement is that it must be done "prior to the time Rose, its successors or assigns, begins construction of the entrance road(s) and acceleration/deceleration lanes." (*Id.* ¶ 10.)

---

[1] Plaintiffs also offer the affidavit of H. Jay Haar, which they submitted in their response to Defendant's initial motion for summary judgment. The Court previously found this evidence did not support granting summary judgment and maintains that finding here.

Plaintiffs assert that Newby's affidavit directly contradicts Permenter's affidavit concerning the meaning of the Agreement, thereby precluding summary judgment. (ECF No. 131 at 4.)

### 3. **Analysis**

As an initial matter, the Court finds that Permenter's affidavit does not "definitively resolve[]" the ambiguous contractual terms at issue. *Sheridan*, 313 F. App'x at 617. As previously noted, the Court's January 26, 2015 Order found that the interaction between 4(c) and 4(c)(i) created an ambiguity. Defendant cannot resolve that ambiguity *definitively* by simply opining, through Permenter's affidavit, that: (1) *all parties* intended 4(c)(i) to be viable only if Wizman began construction of the acceleration/deceleration lanes before *any* construction commenced; (2) *all parties* intended that Rose's obligations under paragraph 4 would end on December 31, 2008; and (3) *all parties* intentionally excluded Coral Beach Circle from Paragraph 4(c)(i).[2] Plaintiffs clearly dispute Permenter's representation of the parties' contractual intent, as evidenced through Newby's affidavit. Although Newby's affidavit expresses more of Newby's own legal opinion rather than expressly averring to Wizman's contractual intent, Plaintiffs have offered enough at this stage to preclude summary judgment.

Indeed, after viewing the evidence in the light most favorable to Plaintiffs as the non-moving party and drawing all inferences in their favor, the Court finds that a genuine issue of material fact exists as to the intended scope of Wizman's option to construct under Paragraph 4(c)(i) of the Agreement. Both parties offer reasonable

---

[2] Notably, Permenter does not expressly state that the parties intentionally excluded Coral Beach Circle from 4(c)(i). Defendant makes this assertion based on Permenter's testimony "it was the intent of Rose and Wizman that[,]" under certain conditions, "Wizman had the right to construct one entrance road ("RE2") together with any required acceleration/deceleration lan[e]s."  (ECF No. 129-2 ¶ 4.)

interpretations of the contractual terms at issue, and the submitted affidavits fail to *definitively* resolve these ambiguous terms as a matter of law. *See Sheridan*, 313 F. App'x at 617. It is not within the Court's purview at this stage to determine which of the available interpretations it finds more persuasive; the presence of a genuine issue of material fact precludes such a determination. Accordingly, the Court cannot grant summary judgment on the basis of Permenter's affidavit.

Defendant next argues that if the Court finds that Newby's affidavit directly contradicts Permenter's affidavit, then there was no meeting of the minds as to the contractual terms at issue and summary judgment should be granted on this basis. (ECF No. 133 at 8–9.) "South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all essential and material terms of the agreement." *Player v. Chandler*, 382 S.E.2d 891, 893 (S.C. 1989). "The 'meeting of minds' required to make a contract is not based on secret purpose or intention on the part of one of the parties, stored away in his mind and not brought to the attention of the other party, but must be based on purpose and intention which has been made known or which, from all the circumstances, should be known." *Id.* (citing *McClintock v. Skelly Oil Co.*, 114 S.W.2d 181 (Mo. App. 1938)).

Defendant's argument fails for at least two reasons. First, the Court has not found as a matter of law that the two affidavits present irreconcilable interpretations of the Agreement. Rather, the Court has only found that the submitted affidavits fail to definitively resolve the ambiguous contractual terms at issue. Second, based on the record at this stage of litigation, the Court cannot find that there was no meeting of the

minds as a matter of law. For example, it is unclear from the affidavits whether the intentions represented by both parties were known or should have been known by all parties. *See Player*, 382 S.E.2d at 893. Accordingly, the Court cannot grant summary judgment on the basis that the parties' lacked a meeting of the minds with regards to the Agreement.

The Court finds that Defendant's remaining arguments in support of its renewed motion for summary judgment are unpersuasive or are precluded by genuine issues of material fact, which must be resolved by a jury. Accordingly, Defendant's renewed motion for summary judgment (ECF No. 129) is denied.

Further, given the Court's findings as to the additional evidence submitted, it may not be appropriate to resolve Defendant's motions in limine at this time. Accordingly, the Court denies the motions in limine (ECF Nos. 134, 135, 136, 137) without prejudice. Defendant may re-file these motions closer to trial should the need arise.

## CONCLUSION

For the reasons set forth above, Defendant's renewed motion for summary judgment (ECF No. 129) is DENIED, Plaintiff's motion to extend discovery (ECF No. 132) is GRANTED, and Defendant's motions in limine (ECF Nos. 134, 135, 136, 137) are DENIED *without prejudice*.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

May 6, 2016
Greenville, South Carolina